I'm Christopher Knopf of the Disability Rights Legal Center, appearing on behalf of the plaintiff appellant C. L. Before I forget, I'd like to reserve three minutes for my rebuttal, and then we agreed to provide Ms. Elliott, our amicus counsel, with three minutes as well. Your honors, C. L. is a person with a disability. She has PTSD and associative identity disorder, recognized psychological disabilities. She's also a Ph.D. speech-language pathologist, and the record makes clear that she meticulously researched after years and years of therapy to obtain a service dog specifically, and to train that service dog to perform tasks for her related to her disability. That service dog is Aspen. Together, C. L. and Aspen are a service dog handler unit, as it is known, and as it was confirmed at trial by the only service dog expert to testify, Ms. Gonzalez. Additionally, your honors, the only relief at trial is an injunction, which was sought to prohibit the appellee Del Amo Hospital from excluding C. L.'s service dog, Aspen, when she needs to be a patient there, and she needs to do that on a repeated basis. This is not a damages case, and Aspen's status at trial is really the pertinent determination here. Your honors, the trial court made two clear errors, whether it's a de novo standard or the clear error standard, to us it doesn't matter, because these are clear errors that must be reversed. First, your honor, the court ruled that Aspen's not a service dog because he was not certified by somebody. Certification, however, is not a permissible prerequisite for being determined to be a service dog. And in fact, as we briefed, the DOJ responsible for implementing the regulations under the ADA very clearly states that certification is not required, and they considered putting in a certification requirement, and they expressly declined to do so. And I'd like to read for you, because it's so dispositive here, the guidance under Appendix A of Part 36. It reads that while some groups have urged the department to modify this position, the department has determined that such a modification would not serve the full area of individuals with disabilities who use service animals. Since individuals with disabilities may be capable of training, some have trained their service animal to perform tasks or work to accommodate their disability. A training and certification requirement would increase the expense of acquiring a service animal, and it might limit access to service animals for individuals with very limited disabilities. I appreciate what you're saying, and I mean, I think you're right, at least, I mean, I've read that. And the question here, two questions. Number one, is that the only interpretation of the district court's order? Or was that one of many reasons why the district court rejected this? And then second of all, if you're right, and you appear to be right, that certification is not required, how do you make this determination? Because I mean, these are very difficult judgment calls to make. The district court had a trial below, and why wouldn't we, if we determined that certification was just one of many justifications that the district court gave, is there another reason why we should reject the district court's finding? Thank you, Judge Nelson. I appreciate those questions, and I hope to answer all of them. First of all, in terms of how to make the determination, as you know, CL offered unequivocal expert witness testimony. Contrary to the court's finding, Kitty Gonzalez's credentials and opinions were accepted by the court, and they should be found to carry the day in this regard, because the clear And those are the specific findings, and there's nothing else that he refers to in his order, is that there was not a certification that would allow him some measure of believing that the dog had been certified, and that the expert contradicted herself by saying that she could not certify the dog in her own program. And, as we know, certification is not required. That's plain and simple under the regulations. So the premise of the court's conclusion... I think there's a difference between whether certification is required and whether the dog would meet standards to be certified, and that's what I'm struggling with. I agree with you that, I mean, at least it appears that it is very cost prohibitive in many circumstances to go through formal certification. But if an expert comes in and says, yeah, you know, I just couldn't certify him, why isn't that enough to suggest that maybe this dog, you know, is not qualified enough to be a service dog, even if they haven't gone through the actual process? Well, Your Honor, first of all, there is no rules or regulations governing certification. What is certification? It could be one thing to one person, or a fly-by-night opportunity says, here's your license, you're certified. There is no clear rule or regulation on that, and that's part of the reason the DOJ found we're not going to require certification. The regulation, the plain text of the regulation says, this is what a service animal is. A dog is a service animal if it's individually trained to do work or perform tasks for the benefit of a person with a disability. That's it. So that's the only thing that needs to be proven. CL meticulously went through how she did exactly that, and that she had trained this dog both through a Wags and Wiggles dog training service for basic obedience, and also through Ms. Gonzalez's own organization, which she confirmed that CL was there, participated. She went by this How to Train Your Own Psychiatric Service Dog manual, and Ms. Gonzalez testified to that, undisputedly. So CL's met her burden. There's nothing further in this case that's required. There's nothing contrary that the appellees can point to, to contradict Ms. Gonzalez's testimony. When you take out certification, her opinion must stand, and therefore, that's the preponderance of evidence, and beyond that, your honors, there was no credibility determination. So Mr. Nauf, I have a question for you, if I may. Sure. First of all, as I understood it, that Ms. Gonzalez, who had her own certification school, said she couldn't certify the dog. Am I right? That she said she couldn't do that because the dog hadn't completed the courses at her age of 19, the dog was a service dog. Absolutely correct, your honor. Under their specific guidelines that Little Angels Service Dogs follows, Assistance Dog International, which is one group that is very reputable, it's wonderful. But the bottom line is, the regulations and the DOJ guidance are clear. It's not required. The only thing that's required is training to perform at least a task related to the persons with disability. And in CL's case, this dog was trained to alert her, to wake her from nightmares, to corner, to stand alert at the shower, many, many different tasks that Ms. Gonzalez confirmed. In speaking with her, she used proper techniques to teach the dog. That's in the records. Mr. Nuff, I see my question used up some more of your time maybe than you had planned, but you initially said you wanted to save three minutes out of your 12 for rebuttal, and we're down lower than that. Would it be appropriate, from your perspective, if we concluded your initial argument, and I'll give you three minutes on rebuttal? Absolutely, Your Honor. Thank you. Okay. Then, could the reporter please put three minutes on Mr. Nuff's clock? We'll give Ms. Full three minutes for rebuttal when it comes to that. And we'll turn to Ms. Elliott. And we appreciate an amicus helping us out on these complicated issues. Thank you, Your Honor. Good morning. My name is Gina Elliott with Munger, Tolles & Olson. I'm representing AMICI, who are disability rights organizations. And AMICI are very concerned, as Mr. Knopf noted, that the district court's ruling in this case, if upheld by this court, would severely impact the ability of people with disabilities who rely on service animals to use their service animals in places of public accommodation. And that is because, as Mr. Knopf noted, the district court's ruling is premised on the fact that Aspen was not certified by some professional, not private organization as a service animal, even though an expert and CL testified that Aspen could do work and perform tasks for the benefit of CL, who is a person with a disability. As Judge Nelson has acknowledged, that is sufficient under the Department of Justice regulations. And I'd like to address, Judge Nelson, your question about how the court can decide whether a service animal is, in fact, a service animal without the help of some sort of professional certification. And as I said, the regulation is clear. The question is whether an animal can do work or perform tasks for the benefit of an individual with a disability. And the Department of Justice has, in fact, recognized that tasks like grounding an individual and interrupting self-mutilation, two tasks that CL testified Aspen can perform, are tasks for the benefit of a person with a disability. That's at 75 Federal Register 56276. And these tasks are extremely important for people with disabilities, especially with psychiatric disabilities, to help them function in the world. As our brief notes, there have been many studies, particularly with veterans, with PTSD, that show the benefits of service animals who can perform these types of grounding and other interrupted tasks to enable them to reintegrate into society and generally go about their lives. But a certification requirement would really impede that ability because, again, as your know, it is beyond the reach of many individuals with disabilities. There is evidence in the record that CL looked, in fact, for a pre-trained service animal, and the cheapest she could find was $15,000. You know, many individuals with disabilities who are relying on service animals are not able to work until they have their service animal. They certainly don't have $15,000. What percentage of service animals are certified that are used? Is it like 10%? Or is it more like 90%? You know, I don't know that, and that's because the crux of this issue is there is no certification. You know, I don't even know how I would answer that question. Got it. I see my time is up, and I thank the Court. Okay. Thank you, Ms. Elliott. I think we'll now proceed to Appellee's Counsel, Mr. Martinez. Good morning, Your Honors. Raul Martinez for Palomo Hospital. It seems to me that the way that the plaintiffs and amici are looking at this order is diametrically opposed from what the order actually says. The standard of review in this case is clear error. It is not even a mixed question of law and fact. It is clear error, because even if it was a mixed question, you would have to base the We have a four-day bench trial here, so there were plenty of disputed facts. And typically, in a mixed question of law and fact, you have a set of historical facts which are undisputed, and that's not the case here. Because you had such a dispute, the trainer, Ms. Gonzalez, even contradicted her own client, the plaintiff. So there's four days of trial, and to suggest that the Court based its decision in any way on the lack of the certification, it makes no sense. Because if that was the basis for the judge's ruling, we wouldn't need a four-day bench trial. And you'd have a one-page order. And you don't have a one-page order. What you have is a very lengthy order that discusses the facts and reaches conclusions of law. Most pointedly, what the judge concluded was that plaintiff had not shown by a preponderance of the evidence that Aspen was a service animal during the seven admissions in 2015 and 2017. And then Ms. Gonzalez— What was the basis of that? Because it does seem that Aspen was trained to perform tasks. Is the position that those tasks that Aspen was trained for were not necessary while the plaintiff was at the hospital? Or is your position that Aspen was never trained at all? I have to go by what the judge concluded. It's our position that the facts in the record support the judge's conclusion that this dog was not a fully trained service dog. And so it doesn't matter what our position. Our position in trial may have been different than it is on appeal. We're looking to see if there's a factual issue here or a legal issue. Well, and so what you're saying is the judge found that there just was no training of— I didn't read it that way, that Aspen was not trained— that there was no evidence that Aspen was trained as a service dog. Well, I think what the court said, and I'm quoting it, it says, other than CL's assertions, there is no evidence in the record as accepted by the court. Well, yeah, but what does that even mean? I mean, it's almost like a tacit admission that there was evidence. Well, there could have been evidence, but then you ultimately get to weigh the evidence, right? Okay, well, what was the evidence against it? I mean, doesn't the district—if one party comes in and says, I trained Aspen as a service dog, which is what happened here. CL said that. Doesn't the district—and no one came in and said, CL's lying. CL didn't do that. But you don't have to point to lying as an argument. No, but you have to have something to suggest that the training wasn't— if the standard really is as low as the Department of Justice regulations suggest, there has to be something to suggest that CL never trained the dog to perform a task. Well, first of all, the evidence was that there was a three-session training course that Ms. Gonzalez's program sponsored, and plaintiff went to one session and missed the other two sessions. Counsel, but regarding that, didn't Ms. Gonzalez ultimately testify that going forward as of 2019, the dog was a service dog? And she based that interpretation on how she read the ADA standards. Okay, so in effect, she was making a decision, a conclusion of the law, which is not the prerogative of an expert to make that determination. That's for the district court. So whatever she said, the district court could have easily discounted. And in terms of conflicts in the evidence, I can point to just one thing because there's many of them. We have a four-day bench trial. The plaintiff testified that the dog could awaken her from nightmares when she was having a nightmare. The defense submitted expert testimony from a psychiatrist saying that when you're having a nightmare, you don't exhibit any symptoms. And so if a human cannot determine if somebody's having a nightmare, how can a dog determine that scenario? Well, some dogs can determine lots of things that people can't determine. That's how they find bodies that are buried underground. That's how they find people in earthquakes and so on. They have a sense of smell. It may give them some other clue that we don't get. But you need a foundation in the record to show that the dog is capable of determining when somebody is having a nightmare. Sure, there's some foundation in science for some of the things dogs can do. The question is, was there any evidence here that the dog could detect a nightmare and could the judge, as a trier of fact, discount plaintiff's self-serving representations that she trained the dog? Well, but here, yeah, but I mean, a couple of problems I have with the district court's order on that. The district court says, paragraph 24 of the findings of fact, plaintiff alleges that she likely trained Aspen to perform a cornering test. Why is the district court, it just seems so dismissive. Because why is the district court saying, well, she alleges that? Allegations are what's in the complaint. You don't cite to a transcript of day two of the testimony if you, I mean, if the plaintiff testified to that, why is the district court trying to discount that? I don't, I think that's the prerogative of the district court to weigh the evidence, and I think when the- Well, but it's clear error if the district court says she alleges that when she didn't allege it, she stated it. She stated it, and maybe that's a- Well, but it's very different than what the district court says about Gonzales, and I think, back to Judge Gould's point, I mean, at paragraph, well, Gonzales said that based on her statement before, which I think is a good one if it were fully fleshed out, is that if Gonzales were just testifying based on her understanding of the ADA requirements, that's one thing, but she testified that based on her observation of the dog, the dog would qualify as a service dog. But at the same time, she said that she would not certify that dog in 2019. So, yeah, but I think- Well, if a company like Ms. Gonzales' company has certain standards for certification, which they may have for various reasons that unrelate to the ADA standard, for example,  on malpractice claims, if someone's dog didn't do something and the person then was injured. And, you know, a company can set their own standards for when they're going to certify that don't really have to do with whether a dog is helpful to a person within the meaning of the ADA. Then again, Your Honor, the plaintiff is the one who introduced the testimony from Ms. Gonzales saying that these are the standards for certification. They set the standards. They put on the evidence that that's what you need to certify a service animal. And so it's not- you can't have it both ways. You can't say, okay, Ms. Gonzales- I don't think they're trying to have it both ways. I think that they're saying- I mean, I do think that- So is your position that the district court- I don't see that anywhere. I think if the district court had said that the only factor you consider is the certification, that one thing would be a very straightforward order. And I think what the court is saying is that the court determined whether Aspen was a service animal, okay, not whether certification was required. Those are two different points. And, you know, the certification is just a factor. That's just one factor out of many in a long bench trial. And this court has to defer on factual issues to the district court. Well, I sort of see your point. I mean, I actually didn't read it as straightforward of whether the district court required certification as the plaintiffs had argued. But still, I mean, paragraph 39 says Gonzales stated that she believes Aspen is a fully trained service dog in 2019. So, I mean, we're not talking about prior damages. We're just talking about as of 2019 and going forward. Gonzales based this opinion on her observation and experience after meeting and observing CL and Aspen for approximately one hour and a half. I mean, I don't know why that doesn't meet the ADA standards. Whether it meets the standard or not, the real question is whether the court could discount that testimony and disregard it based on other testimony in the record. That's really the issue. Well, the other testimony, well, that she wouldn't certify her for her own program. I don't find that a compelling reason at all. I'll be honest with you. I mean, the only thing that says is exactly what the plaintiffs are arguing, which is you shouldn't have to pay $15,000 to go through the course and obtain a certification. What is the foundation for that conclusion that Ms. Gonzales reached? That she is a certified, trained service animal, yet she says, on the other hand, I wouldn't certify her for my program. There's no standard certification, as I understand it. So Ms. Gonzales says, I wouldn't certify her. Of course she wouldn't. Because her whole business is if you're going to come to Little Angels and get certified, then you got to come to all three days and you got to finish them. And you didn't do that. And she didn't. And that's another factor the judge could consider. The judge could readily consider that. But that has no bearing on the ADA requirements. It may. Well, then what are the ADA requirements that the judge would have applied here? That's the question. The ADA requirements appear to be, was she trained to do any task? And she appears to have been trained to do a task. She's not Little Angels certified,  And the court rejected that proposition. The court said that she was not trained. I understand. I just don't know why the district court did it. I don't know why. Can I ask a more fundamental question? They're not seeking damages here. I don't, maybe, maybe, I guess I'm not aware of the attorney's fees issues or not. Why is your client fighting this so hard? You're talking about my client? Yeah. I want to know why, why you, why you won't just allow this dog from this individual. The reason is that when she's going through therapy, they're trying to teach her during these sessions, they're trying to teach you, teach her coping mechanisms through therapy. And what happens if you introduce the dog into that setting, what happens is you interfere with that therapy. That was a medical judgment of the Dalamo professionals, the psychiatrists. That's why she was excluded. The judge never reached the second issue of whether that, having the dog in this therapy would interfere with, with those sessions. And is that the fundamental alteration? Fundamental alteration. Yeah. That, that, that's the affirmative defense. Right. So the position, I mean, basically Dalamo's position is it's not because, okay, that's helpful clarification because the position is not, look, we don't want dogs walking around our facility, which I suppose could be, you know, a justification, but, but the position here is we don't think that this, we don't, it interferes with the actual service that we're trying to explain if who's coming in. Is that, that, that's exactly it. Yeah. I mean, if it would have been a different kind of a service animal service dog, there would have been an issue. It was a psychiatrist at the hospital who bought it. It is. Yeah. And that's the problem. And unfortunately judge Carter never reached that issue. He just decided. If the judge did not reach that issue, why shouldn't we Reband or vacate the ruling and remanded so the judge could reach the issue. For example, to a limited remand to the judge to address that issue. Yeah. And let me say that if you were to remand, you would have to remand for a clarification on the first     at worst, if you were to remand, you would have to remand for a clarification on the first issue, which is whether the dog is a service animal, uh, for judge Carter. They may, there may be an ambiguity on what he meant in his language and in the order. So it wouldn't be a complete reversal and remand. It would have to be a remand for clarification if you went that route. But I said, submit that that would be a waste of time because I, I believe that if judge Carter was asked to clarify or clean up his order, he would, he would do so in a way that might pass muster with, with this court. So it would be essentially a waste of time to go through this exercise. We suggest instead of the courts, if we affirm, did whether he could clarify satisfactory as a bridge, we can't cross today. Well, certainly you can't, you can't cross it. I'm just thinking in terms of judicial economy on this case and what's going on in the fact that, you know, this is not a bad guy hospital. They're doing the right thing. It was just a psychiatrist who had an issue. There's no need to, to even reverse it and remanded in any fashion. So I see my time is up. And with that, I would submit. Okay. Thank you. We left three minutes for rebuttal argument from Mr. Thanks very much. Your honors. I'm trying to hit the various points. Initially would like to say there's actually from a palance point of view, not any or many, at least undisputed facts in judge Carter's order. That makes this actually an interpretation of law that requires de novo review. And our view at worst, it's mixed question of fact and law that aside, as we have said, we believe we prevail on either standard de novo or a clear error. Secondly, your honors. Again, I go back to 52, a federal federal rule of civil procedure, 52 way. The court has to include its specific reasoning in its findings and conclusions. And I have actually give judge Carter a lot more credit than council does, because I think he was extremely deliberate in the language that he used in the issues that he's putting before this court. In fact, it was said during trial, this court, this case is going up to the court of appeal. He wants this court to clarify what the regulations mean. And so in our view, his basis is very carefully considered and it's fundamentally founded on the issue of certification. And as the, as the CFR and the DOJ guidance replete throughout the record on ADA doc website makes clear certification is not required here. And if you take out certification, the paragraph issue is 54 in the judge's order. And that says that because Ms. Gonzalez wasn't willing to certify her plaintiff, wasn't able to meet her burden by a preponderance. So it's absolutely calculated that the certification was crucial in this particular instance. He wants to know whether certifications required. So let me ask a question. If I may, assuming we were to agree with your position that the dog should be considered a service dog. Sam, here you are. If we did that, wouldn't the case still have to be remanded? For the district court to reach the other issues about whether the dog would somehow disrupt the hospital or interfere with its program for, for CL that's absolutely correct. Your honor. We are seeking remand reversal of the district's court order on the basis of certification and corroboration of plaintiff's testimony. Those are the basis for its ruling. Reverse on that remand for further proceedings. The court would then need to issue a ruling findings of fact, conclusions of law on the issue of fundamental alteration. That was going to be the issue. We thought we were going to be. No one wants to waste a lot of time here. So I need to ask you why just a practical question. Why is your client seeking to get psychiatric treatment from a psychiatrist in a facility that says our method of treatment does not allow dogs. We don't want you leaning on the dog. Are we all wasting our time here? Why didn't she just go somewhere else that says our method of treatment does allow dogs. Your honor. Actually the record absolutely contradicts what you just said. The right, the testimony and the record, which we'll do hopefully in another proceeding refers to the fact that they actually do use dogs and their therapy dogs. And there are animals there. In fact, Del Amo didn't, didn't actually. Dispute the fact that whether Aspen was a service dog. It's actually surprising that we're even here on that. So in any case, your honor, there's lots of reasons in the record. Why CL needs to go to Del Amo it's cost location. The only other, the record shows the only other location she could use is in Texas and she can't afford to go there. And by that same token, your honor. And this is really crucial to the fundamental questions. Your honors have been asking. She couldn't afford to go for three days to San Diego, to little angels, to, to have Ms. Gonzalez check off all the boxes that are required for certification. That's all Ms. Gonzalez was saying. And all she testified about, I can't check the boxes, so I can't certify her, but it's a service dog. That was her testimony loud and clear. Your honors. If there's a, if there's any other questions, I'm happy to answer them. Otherwise I'll conclude. I think you're over your extended time. Yeah. If I, if I, if I could, if you give me one minute to conclude your honor, I'd appreciate it. That clock shows you're already over two minutes. Beyond the three we gave you. Okay. Your honor. We very much appreciate the court's questions. We ask for remand for further proceedings. Thank you very much for your time today. Thank you. Counsel. Ms. Elliott, we didn't reserve any of your three minute argument for rebuttal, but I'll give you 30 seconds. If you have a gem or two in 30 seconds. Oh, thank you. Your honor. I wasn't expecting that. That's very generous. I just want to reiterate that we really do think the district court's order was based on its belief that certification was a relevant factor. And as a judge Nelson, you've you've noticed it's just, it's simply not. And we think on that basis, the, the court's remand for at least reconsideration. Thank you. Okay. Thank you. Well, I want to say this is. A very. Challenging case. I want to thank Mr. Knauf, Ms. Elliott, and Mr. Martinez for their excellent advocacy to the court. On these issues. The court will. Now submit this case. And with the parties will. Hear from us in due course. Thank you. Thank you.
judges: Gould, Cogan, Nelson